RENDERED: OCTOBER 27, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0672-MR

PATRICK WILLIAM ERSKINE                                       APPELLANT

APPEAL FROM BOONE FAMILY COURT
v.           HONORABLE LINDA R. BRAMLAGE, JUDGE
ACTION NO. 20-CI-01391

TONYA ANNE ERSKINE                                            APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: COMBS, DIXON, AND ECKERLE, JUDGES.

ECKERLE, JUDGE: Patrick William Erskine ("Appellant") appeals from an order

of the Boone Family Court which granted the post-decree motion by Tonya Anne

Erskine ("Appellee") to modify child support. Appellant argues that Appellee

failed to make a threshold showing for modification of support, that the Family

Court erred by basing the modification on the parties' income at the time of the hearing rather than the time of the motion, that the Family Court erred in calculating his current income, and that the Family Court's abused its discretion by making the modification retroactive to the date of Appellee's motion. We agree with Appellant that the Family Court erred by including his leave-of-absence pay in its extrapolation of his current income. The Family Court's miscalculation of Appellant's income necessarily affected its assessment of which party bore the burden of proof on the motion to modify. However, the Family Court's remaining findings and conclusions were not clearly erroneous or an abuse of discretion. Hence, we affirm in part, reverse in part, and remand for an appropriate recalculation of Appellant's modified child support obligation and a new determination of whether to grant the motion to modify.

Appellee and Appellant were married in 2002 and separated in October 2020. There are two minor children born of the marriage. Appellee filed a petition for dissolution of the marriage on December 8, 2020. Thereafter, on March 11, 2021, they entered into a Property Settlement Agreement/Custody Agreement ("the Agreement"). In pertinent part, the parties agreed to deviate from the Kentucky Child Support Guidelines with respect to support of the children. The child-support worksheet attached to the Agreement calculated Appellant's obligations under the Guidelines would be $871.54.

Appellant agreed to pay child support in the amount of $500 per month.  In addition, he agreed to maintain the children on his health insurance up to age 25.  He further agreed to pay 50% of the children's following expenses: uncovered medical expenses; work-related childcare costs; school expenses; expenses for extra-curricular activities; "necessary costs incurred on behalf of a child in the pursuit of receiving . . . a high school diploma;" driving school; and car insurance premiums.  Finally, Appellant agreed to pay the entire cost of cell phones and service for each of the children.

The Family Court adopted the Agreement as part of its Findings of Fact, Conclusions of Law, and Decree of Dissolution entered on March 30, 2021.  Shortly thereafter, on September 2, 2021, Appellee filed a motion to modify child support.  In the affidavit supporting her motion, Appellee stated that she lost her job in March but would be starting a new job in another month.  She further stated that Appellant stopped paying the children's cell phone and other expenses as provided under the Agreement.  Finally, Appellee moved to hold Appellant in contempt for his failure to pay those expenses.

The Family Court conducted a hearing on March 10, 2022.  At the hearing, Appellant testified that his 2021 income as shown on his W-2 was $62,411.71.  He testified that he normally worked 40 hours per week, but his 2021 income reflected overtime that his employer required him to work.  Appellant

further testified that his employer was phasing out mandatory overtimes, and he expected that he would return to his normal work hours by summer of 2022.

Appellant further testified that he took a leave of absence in 2021. He received two payments in 2021 for this leave time, which was reflected on his 2021 W-2. He also received a payment in January 2022 for $3,944, reflecting his leave time. Appellant also submitted his nine paycheck stubs for 2022, which showed total year-to-date income of $16,417. That amount included the $3,944 in leave-of-absence pay.

Appellee presented evidence showing that her income, beginning in September 2021, is $70,000 per year, and the Family Court so found. In determining Appellant's income, the Family Court started by taking the year-to-date income from his March 4, 2022, paycheck, $16,417, and dividing it by nine paychecks for a weekly amount of $1,824 per week, and then multiplying it by 52 weeks for an annual income of $94,848. Next, the Trial Court then subtracted $3,944, representing the delayed leave-of-absence pay earned in 2021, for a total estimated yearly income of $90,904. Finally, the Trial Court divided that amount by 12 to reach an estimated monthly income of $7,575.33.

Based on those numbers, the Family Court ordered Appellant to pay child support in the amount of $1,102.08 per month, effective September 1, 2021, until May 30, 2022, when the oldest child graduates from high school. The Family

Court ordered him to pay $754.88 per month after May 30, 2022. The Family Court declined to hold Appellant in contempt for failure to pay the children's expenses. However, the court directed him to pay those expenses or reimburse Appellee for those expenses which she paid.

Appellant then filed a motion to alter, amend, or vacate the order, CR[1] 59.05, which the Family Court denied. This appeal followed. Additional facts will be set forth below as necessary.

We review the Family Court's decision to grant Appellee's motion to modify child support for abuse of discretion. *McKinney v. McKinney*, 257 S.W.3d 130, 133 (Ky. App. 2008). The Family Court's factual findings will not be disturbed unless clearly erroneous, and due regard shall be given to the opportunity of the Family Court to evaluate the weight of the evidence and the credibility of witnesses. CR 52.01. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Downing v. Downing*, 45 S.W.3d 449, 454 (Ky. App. 2001). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . .

---

[1] Kentucky Rules of Civil Procedure.

cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (cleaned up).

Parties to a dissolution of marriage proceeding may enter into a separation agreement addressing issues of child support. While a separation agreement may limit modification of certain terms, it may not preclude modification of an award of child support. KRS[2] 403.180(6). *See also Giacalone v. Giacalone*, 876 S.W.2d 616, 619 (Ky. App. 1994), and *Tilley v. Tilley*, 947 S.W.2d 63, 65 (Ky. App. 1997). Once a court adopts the provisions of a settlement agreement relating to child support, those provisions are subject to modification under KRS 403.213.

KRS 403.213(1) allows a party to seek modification of child support "only upon a showing of a material change in circumstances that is substantial and continuing." The statute further creates a rebuttable presumption that a material change in circumstances exists if there is a 15% difference in the amount of support a parent pays and the amount actually due pursuant to the guidelines. KRS 403.213(2). Conversely, a change of less than 15% "shall be rebuttably presumed not to be a material change in circumstances." *Id.* The statutory presumption "is

---

[2] Kentucky Revised Statutes.

applicable to *all* proceedings to modify child support." *Tilley*, 947 S.W.2d at 65 (citing *Wiegand v. Wiegand*, 862 S.W.2d 336, 337 (Ky. App. 1993)).

Appellant argues that Appellee made no showing that an application of the Guidelines at the time she filed her motion would result in a 15% or greater change in the amount of support he owed. As noted above, Appellee lost her job in March of 2021 and did not obtain a new job until September. But as stated in her affidavit, her new job paid more than her old one. Furthermore, the affidavit and motion did not allege that Appellant's income had changed since the time the original support order was entered. Consequently, he argues that Appellee failed to show that "material change in circumstances that is substantial and continuing" existed at the time she filed her motion.

Essentially, Appellant argues that the Family Court should have made a threshold finding of a material change in circumstances based upon the allegations in Appellee's motion and affidavit. He maintains that it was improper for the Court to consider subsequent evidence when Appellee failed to meet her initial burden of going forward on her motion. But when an award of child support entered pursuant to the terms of a separation agreement under KRS 403.180 is reopened for modification, "the child support must be set anew pursuant to KRS 403.210 *et seq*." *Giacalone*, 876 S.W.2d at 620. *See also Tilley*, 947 S.W.2d at 65, and *Wiegand*, 862 S.W.2d at 337.

While the Agreement set child support below the Guidelines, the parties attached a support worksheet showing that an application of the Guidelines would result in Appellant's child-support obligation being $871.54. However, the Family Court was free to disregard the parties' agreement as to the amount of child support which Appellant owed in deciding to modify the amount. *Tilley*, 947 S.W.2d at 65. In order to calculate the initial support amount anew, the Family Court had to hear evidence of the parties' respective incomes and resources. The Family Court did not abuse its discretion in making this determination based on the evidence presented at the March 10, 2022, hearing instead of making a threshold determination based solely on the allegations presented in Appellee's September 2, 2021, motion and affidavit.

But at that point, the Family Court was required to make the determination of whether the application of the Guidelines would result in a 15% or greater difference in the amount of support which Appellant owed. Based on the rebuttable presumptions established by KRS 403.213(2), Appellant would bear the burden of proving that there was no material change in circumstances if the difference were 15% or greater, while Appellee would bear the burden of proof if the difference were less than 15%. Consequently, the Family Court's decision to grant the modification turns on the sufficiency of the evidence supporting the

parties' respective incomes, and the Family Court's application of those findings under the Guidelines.

In challenging the Family Court's application of the Guidelines, Appellant first notes that the Agreement required him to pay certain expenses which he would not have been required to pay under the Guidelines. He argues that the Family Court abused its discretion by failing to adjust his modified support obligation to reflect these additional amounts. Under the circumstances presented in this case, we find no abuse of discretion.

KRS 403.211(6) and (7) authorize the court to allocate reasonable child-care costs and health-care costs between the parents. On the other hand, there is no statutory requirement that the court allocate other expenses attributable to the children. Of course, the parties may agree to allocate or assign additional expenses beyond the requirements of the statute. *See Pursley v. Pursley*, 144 S.W.3d 820, 825 (Ky. 2004). The Family Court may adjust the Guidelines amount based upon certain factors, including an agreement between the parties. KRS 403.211(3)(f). But we review the Family Court's decision whether to deviate from the Guidelines for abuse of discretion. *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 329 (Ky. 2011). While Appellant's additional obligations under the Agreement may have warranted a deviation from the Guidelines, we cannot say that the Family Court was obligated to do so.

Appellant primarily argues that the Family Court erred in its calculation of his 2022 income. KRS 403.212(2)(e) allows a court to base child support on a parent's potential income if it determines that the parent is voluntarily unemployed or underemployed. There is no allegation in this case that Appellant was voluntarily unemployed or underemployed. His 2021 income was affected by a 12-week leave of absence, but the Family Court did not impute income to Appellant for that year. Rather, the Court extrapolated his average monthly wage from his average weekly wages in 2022.

While Appellant does not object to the Family Court's use of this extrapolation to calculate his 2022 income, he argues that its methodology employed several mathematical errors which affected its calculation of the average monthly wage. First, Appellant argues that the Trial Court improperly considered his overtime pay in calculating his 2022 income. Appellant contends that the Family Court inflated his 2022 income by including overtime that would not continue throughout the year.

Appellant testified that his employer, Toyota, required all employees to work ten instead of eight-hour days. Consequently, he stated that his 2022 salary and his salary for the last four months of 2021 included that mandatory overtime. However, Appellant further testified that Toyota was engaged in a mass hiring, and overtime would not be available on weekends after April 2022.

Appellant further testified that Toyota intended to eliminate all overtime after the summer of 2022.

But in this instance, the Family Court extrapolated income based on Appellant's current earnings and recent work history. Although Appellant indicated that he expected the mandatory overtime to end within a few months, there was no definitive evidence that his salary would decrease. Under the circumstances, the Family Court was not obligated to consider the potential reduction in Appellant's salary when calculating his current income. Appellant may be entitled to seek a modification of his child support if his salary is reduced by elimination of mandatory overtime.

Second, Appellant notes that the $3,944 represented leave-of-absence pay which he earned in 2021 but did not receive until 2022. Consequently, he argues that this amount should have been subtracted from his year-to-date pay before dividing that amount to reach an average weekly pay. By including that amount, Appellant argues that the Trial Court improperly inflated his 2022 estimated wages.

In this matter, we agree with Appellant. Appellee contends that the Family Court did not expressly find that the $3,944 represented amounts that Appellant earned in 2021, but were not paid until 2022. However, it is apparent that the Family Court accepted Appellant's testimony, because it subtracted that

amount from the estimated 2022 total. By including the $3,944 in the year-to-date total, the Family Court averaged that amount across the entire year. Subtracting that amount from the estimated yearly total still left Appellant with an estimated monthly salary that was significantly inflated by amounts that were not expected to be repeated through the year.[3] We must conclude that this was clearly erroneous. Therefore, we must remand this matter for recalculation without imputing the past-due leave-of-absence pay to his current income. Since this determination affected the Family Court's assignment of the burden of proof, we must also remand this matter for a new consideration of Appellee's motion to modify child support.

Finally, Appellant argues that the Family Court abused its discretion by ordering that the modification be effective as of September 2, 2021. KRS 403.213(1) provides that child support "may be modified only as to installments accruing subsequent to the filing of the motion for modification[.]" However, the Family Court had broad discretion in setting the effective date of any increase in child support back to the date Appellee filed the motion. *McCarty v. Faried*, 499 S.W.3d 266, 275 (Ky. 2016) (citing *Giacalone*, 876 S.W.2d at 620).

---

[3] In its calculation, the Family Court included Appellant's leave-of-absence pay as part of his initial year-to-date salary, and then subtracted that amount from the total. This calculation resulted in an estimated annual salary of (($16,417 /9) * 52 weeks) - $3,944 = $90,904. Subtracting the leave-of-absence pay from his year-to-date at the outset results in an estimated annual salary of (($16,417 - $3,944) /9) * 52 weeks = $72,066 (or $72,072 if rounding up after division).

Appellant points out that there was no definitive evidence regarding his income for the period between September 2 and December 31, 2021. The evidence at the hearing focused on his income after January 1, 2022. Appellant introduced his W-2 statement for 2021, which showed income of $62,411.71. That income reflected his 12-week leave of absence, including two of the three payments for that period. But Appellant also testified that he was back to work by the end of summer or early fall. And as noted above, Appellant testified that Toyota required him to work overtime after he returned to work.

This evidence was not particularly conclusive, but it was sufficient to support the Family Court's decision. Although the Family Court clearly erred by including the leave-of-absence pay in its calculation of Appellant's current income, it did not clearly err by inferring that Appellant's income, including overtime, remained stable for the last four months of 2021, and up to the time of the hearing in March 2022. Therefore, if modification was otherwise warranted, the Family Court did not abuse its discretion by making the modification of his support obligation retroactive to the date of Appellee's motion.

Accordingly, we reverse the order of the Boone Family Court to the extent that it included Appellant's leave-of-absence pay in its calculation of his expected 2022 income. This matter is remanded to the Family Court for recalculation of his income and support obligation based on an annual income of

-13-

no more than $72,072. The Family Court shall then consider the motion to modify using that amount in the calculation under the Child Support Guidelines. Upon making that calculation, the Family Court shall determine whether application of the Guidelines would result in a 15% or greater change in Appellant's support obligation. Upon making that determination, the Family Court shall address the merits of Appellee's motion to modify, giving due regard to which party bears the burden of proof on the motion. In all other respects, we affirm the order of the Boone Family Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jennifer L. Conner
Crestview Hills, Kentucky

BRIEF FOR APPELLEE:

Erica F. Blankenship
Covington, Kentucky