RENDERED: MARCH 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0345-MR

CHRISTINA HOLT TAYLOR          APPELLANT

APPEAL FROM WARREN FAMILY COURT
v.     HONORABLE CATHERINE R. HOLDERFIELD, JUDGE
ACTION NO. 16-CI-01055

TAD DIRK TAYLOR          APPELLEE

AND

NO. 2024-CA-0554-MR

CHRISTINA HOLT TAYLOR          APPELLANT

APPEAL FROM WARREN FAMILY COURT
v.     HONORABLE CATHERINE R. HOLDERFIELD, JUDGE
ACTION NO. 16-CI-01055

TAD DIRK TAYLOR          APPELLEE

** ** ** ** **

BEFORE:  CETRULO, L. JONES, AND TAYLOR, JUDGES.

JONES, L., JUDGE:  Christina Holt Taylor, *pro se*, brings these two related

appeals from decisions of the Warren Family Court.  We affirm.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

As we recounted in a previous appeal:

Christina and Tad Dirk Taylor ("Tad") were married in 2000 and had two children together.  They divorced in 2019.  The decree of dissolution, which incorporated the parties' separation agreement, gave the parties joint custody of the children, with Tad as the primary residential custodian.  Christina was ordered to pay $150 monthly in child support per the separation agreement, which the parties acknowledged was a deviation from the child support guidelines.  She was also responsible for half the costs of the children's extracurricular activities and maintaining secondary health insurance for the children.

Just four months later, Tad moved to modify child support, claiming Christina had not been paying her half of the expenses under the agreement.  Essentially, he argued Christina had breached the agreement which had led to the deviation from the child support guidelines, and therefore modification was necessary and proper.  Christina responded there had been no material change in circumstances since the entry of the decree, that she gave up substantial assets in exchange for the reduced child support obligation, and that Tad just wanted a "do over."  Although unclear from the record, the family court held at least four hearings on the motion to modify child

> support, resulting in hours of testimony concerning the parties' income.
>
> . . .
>
> On February 9, 2023, the family court entered [an] . . . Order Modifying Child Support and attached child support worksheets. Christina was ordered to pay $544.18 per month in child support and $21,793.75 in arrearages.

*Taylor v. Taylor*, No. 2023-CA-0185-MR, 2024 WL 1221635, at *1 (Ky. App. Mar. 22, 2024) (footnotes omitted) (hereinafter *Taylor I*). Because the family court had not made findings of fact to explain its decision, we vacated and remanded with instructions "for the family court to make specific findings of fact and conclusions of law in support of its determination to modify child support, and state them separately in a written order or judgment for appropriate review on appeal." *Id.* at *2.

On remand, the family court issued a lengthy decision which contains extensive findings of fact. The court ordered Christina to pay $596.92 monthly in child support, retroactive to the date Tad filed the motion to modify, as well as additional amounts to satisfy the arrearage she had accrued.

Dissatisfied, Christina filed Appeal No. 2024-CA-0554-MR.

The parties' contentious relationship led them to often seek relief from the family court on other matters. Pertinent here, in March 2023, the family court

ordered Christina to pay certain extracurricular expenses. Christina challenges that decision in Appeal No. 2023-CA-0345-MR.

We resolve both appeals in this combined Opinion.

## ANALYSIS

### Deficient Briefs

We have examined the parties' briefs. However, we "will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021). Our careful examination of the briefs submitted by both parties shows that they fail to comply substantially with the Kentucky Rules of Appellate Procedure (RAP).

RAP 32(A)(3) requires the statement of the case section of an appellant's opening brief to contain "a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal, with ample references to the specific location in the record supporting each of the statements contained in the summary." RAP 32(A)(4) similarly requires the argument section of an appellant's opening brief to contain "ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for

-4-

review and, if so, in what manner." An appellee's brief contains similar requirements for citations to the record. *See* RAP 32(B)(3)-(4).

Neither of Christina's opening briefs, nor Tad's two appellee briefs, contain a pinpoint citation to the written trial court record. Christina cites to what purport to be hearings held by the family court, but none of those hearings are in the record before us, which neither party has sought to supplement.

In addition, Christina has not provided proper preservation statements. She asserts her arguments are preserved but does not show with specificity when, or how, she preserved them. A generic assertion of preservation unaccompanied by a pinpoint citation to the record is insufficient. *See, e.g.*, *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 377 (Ky. App. 2018).

The third major deficiency in Christina's briefs is two defects in the appendices. First, she does not cite to where in the trial court record the documents in the appendices may be located. RAP 32(E)(1)(d) requires an index for appendices to "set forth where each document may be found in the record." Second, the appendices appear to contain matters outside the record of which we may not take judicial notice. For example, one item in the appendix to Christina's opening brief in Appeal No. 2024-CA-0554-MR purports to be a June 5, 2018 letter from Tad's former counsel to Christina's former counsel regarding potential settlement terms. Under RAP 32(E)(1)(c), "[e]xcept for matters of which the

appellate court may take judicial notice, materials and documents not included in the record shall not be introduced or used as exhibits in support of briefs." Those two complementary requirements for appendices (showing where the matters may be found in the record and not including matters not found in the record) are meant to "prevent the court from having to scour the record . . . ; to ensure the orders are readily available to the court; and, to ensure only documents and materials 'included in the record' – other than items not subject to judicial review – are provided as exhibits." *Curty*, 561 S.W.3d at 378.

The deficiencies in Christina's briefs are rendered more egregious by the fact that we have already pointed out similar deficiencies to her. On December 4, 2023, we granted Tad's motion to strike Christina's initial brief in Appeal No. 2023-CA-0345-MR, though we gave her leave to file a new brief. Our order explained that Christina's brief was deficient because it did not contain citations to the written record, failed to contain proper preservation statements, and contained matters outside the record in its appendices.

We recognize that Christina is proceeding *pro se*. However, that status does not exempt her from complying with mandatory briefing rules. *See, e.g.*, *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019).

The multiple deficiencies in Christina's briefs are too egregious to overlook – especially since we already struck a similarly deficient brief. However,

we prefer to resolve appeals on the merits and so we have decided to impose sanctions less severe than dismissing these appeals.

First, we shall review Christina's issues only for palpable error due to her failure to provide adequate preservation statements. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) ("If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved."). Under Kentucky Rule of Civil Procedure (CR) 61.02, "[a] palpable error which affects the substantial rights of a party may be considered by . . . an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." An error is palpable only if it is "obvious" and "so grave that, if uncorrected, it would seriously affect the fairness of the proceedings" – in short, a palpable error is "so egregious that it jumps off the page . . . and cries out for relief." *Davis v. Commonwealth*, 620 S.W.3d 16, 30 (Ky. 2021) (internal quotation marks and citations omitted). Second, we shall not consider the appendices to Christina's briefs. *See* RAP 10(B)(3) (permitting an appellate court to strike a portion of a noncompliant brief). Finally, though we do not impose sanctions, we also express our strong disapproval of Tad's deficient briefs. It is improper for an attorney to submit briefs lacking pinpoint citations to the record.

As previously stated, the limited record before us does not contain the entirety of the protracted dissolution proceedings. However, it appears undisputed that the parties' agreement, which the family court adopted in the dissolution decree, required Christina to pay half of "any and all extracurricular expenses for the minor children that are related to school or educational activities." Christina was also required to pay half of medical bills incurred on behalf of the children which were not covered by insurance.

As we construe her brief, Christina challenges the family court's holding that she must pay five specific expenses: half of yearbook fees for the children; a graduation cap and gown; a hoodie memorializing the younger child's participation in the state swimming tournament; unspecified swim equipment; and a portion of the cost of a letterman jacket for the younger child. The gist of Christina's argument seems to be that those expenses are not covered by the parties' agreement because they were optional. Christina also hazily challenges the family court requiring her to pay a portion of the children's counseling costs.

We discern no palpable error in the family court's conclusion that expenses for graduation and participation in swim team, a hoodie memorializing participation in a swim team event, and yearbooks are all "related to school or educational activities." The agreement broadly and unambiguously provides that

Christina will pay half of "any and all" expenses related to the children's school or educational activities. That language belies Christina's argument that she is responsible only for half of expenses which must be incurred to obtain a high school diploma. *See, e.g.*, *Sadler v. Buskirk*, 478 S.W.3d 379, 382 (Ky. 2015) (noting that "judicial review of a property settlement agreement to determine its meaning is simply a matter of contract interpretation" and when a contract is not ambiguous, "we look only to the words contained within the four corners of the agreement to determine the parties' intentions"); *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (holding that a court will interpret an unambiguous contract, such as a settlement agreement, "by assigning language its ordinary meaning and without resort to extrinsic evidence"). We decline Christina's invitation to narrow the facially wide scope of the parties' agreement regarding extracurricular expenses.

The letterman jacket is not as obviously, directly related to a school activity. However, a letterman jacket is an emblem of the wearer having participated in a school-related extracurricular activity. Thus, there is a link between the letterman jacket and a school activity. Moreover, the family court reduced Christina's obligation for the jacket to $100, the amount she previously paid towards a similar jacket for the parties' other child. Given the broad language of the parties' agreement, we perceive no manifest injustice.

Christina's counseling bill argument is based on her insistence that Tad did not provide sufficient documentation to show the expenses incurred and the payments he had made towards those expenses, which she asserts were prerequisites to trigger her obligation to pay her share of those bills. But the record before us does not contain the billing information at issue. In fact, the record before us in this appeal begins with the order from which Christina appeals. We cannot conjure a palpable error from a blank record.

We also note that the family court carefully considered each request for reimbursement by Tad and disallowed some because they were duplicative or outside the parties' agreement. The order at issue contains specific findings explaining the amounts Christina must pay. The court facially followed the parties' agreement. Therefore, Christina has not shown the existence of a manifest injustice.

**Appeal No. 2024-CA-0554-MR**

The parties' settlement agreement, which the family court adopted in October 2019, required Christina to pay $150 per month in child support – a deviation from the child support guidelines. In February 2020, Tad filed a motion to modify Christina's child support obligation, alleging she had failed to pay her share of expenses or provide secondary health insurance for the children. After numerous delays, in February 2023 the family court granted Tad's motion and

ordered Christina to pay $544.18 per month in child support.  In *Taylor I*, we vacated that order because it did not contain findings of fact.  2024 WL 1221635, at *2.  We did not address the merits of modifying child support.

On remand, the family court followed our directive by issuing a new decision, over twenty pages in length, containing extensive findings of fact.  The court ordered Christina to pay $596.92 per month in child support and calculated her arrearage to be $17,628.47.  The court required Christina to pay a total of $650 per month, with $53.08 designated to go to satisfying her arrearage, until the parties' youngest child turned 18 and graduated high school.  After those events occurred, the order required Christina to pay $600 per month until her arrearage is satisfied.  On appeal, the gist of Christina's argument is that there was not a material change in circumstances sufficient to modify child support.

Christina's arguments are fatally terse and conclusory.  For example, she argues the findings "do not reflect the testimony nor the evidence presented in the hearings.  Christina's income is inflated and Tad's income and potential income are deflated and ignored."  Appellant's Brief, p. 11.[1]  But Christina cites to nothing specific in the record before us to support those underdeveloped arguments.  As we have held, "a terse, conclusory assertion wholly unaccompanied

---

[1] It is difficult to cite with precision to Christina's brief because it is unpaginated.

-11-

by meaningfully developed argument or citation to authority is insufficient to merit appellate relief." *Schell*, 640 S.W.3d at 32.

The family court explicitly found that there had been a material change of circumstances which supported modifying the prior child support decisions. *See* Kentucky Revised Statute (KRS) 403.213(1) (providing that child support may be modified "only upon a showing of a material change in circumstances that is substantial and continuing"). The court discussed at length its calculations of the parties' respective incomes based on the financial documents before it, such as tax returns and earnings statements (evidence which is not contained in the limited record before us). In sum, for purposes of our palpable error review, the family court rectified the error we found in *Taylor I* and generally satisfied the statutory prerequisite for modifying child support. Christina has not shown the existence of a palpable error.

Moreover, we must reject the argument Christina seems to make that the parties' agreement precluded the family court from modifying child support. An agreement among the parties cannot prevent a family court from modifying child support upon a finding of a material change in circumstances. *See Tilley v. Tilley*, 947 S.W.2d 63, 65 (Ky. App. 1997). In fact, if there is a sufficient material change in circumstances, child support may be modified even if the parties' incomes have not changed. *Id.*

Finally, the family court did not err by using the child support guidelines found in KRS 403.212 to assess Christina's new child support obligation, even though the parties' agreement was a deviation from those guidelines. *Tilley*, 947 S.W.2d at 65 ("Furthermore, in reaching its decision, the trial court is to consider both the changes in finances of both parents as well as the needs of the child. Thus, it was proper for the trial court to disregard the prior agreement of the parties as to the amount of child support payable by Millard in deciding to raise the amount.") (citation omitted); *Nelson v. Ecklar*, 588 S.W.3d 872, 876 (Ky. App. 2019) (following *Tilley* and holding that "this Court declines to follow the husband's reasoning that modification of child support pursuant to KRS 403.212 does not apply where parties agree to an amount lower than what would be required under the guidelines"). We view any remaining contentions of error as moot or without merit.

**CONCLUSION**

For the foregoing reasons, the Warren Family Court is affirmed in Appeal Nos. 2023-CA-0345-MR and 2024-CA-0554-MR.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christina Holt Taylor, *pro se*
Scottsville, Kentucky

BRIEF FOR APPELLEE:

Ashlea Shepherd Porter
Bowling Green, Kentucky